UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
**THOMAS LAGAN**,

            Petitioner,

                                           **MEMORANDUM AND ORDER**
- against -                                    20-CV-2221 (AMD)

**DEREK EDGE**,
*Warden, MDC Brooklyn,*

            Respondent.
-------------------------------------------------------X
**ANN M. DONNELLY**, United States District Judge:

On May 18, 2020, the petitioner filed an Emergency Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 alleging that his continued incarceration at the Metropolitan Detention Center in Brooklyn, New York violates his Sixth and Eighth Amendment rights. He requests an immediate transfer to USP Canaan or a temporary release to home confinement. (ECF No. 1.) The government objects on the grounds that (1) the petition is barred by *res judicata* because it is merely a relitigation of his unsuccessful motion for compassionate release; (2) the Court does not have the authority to grant the requested relief under 28 U.S.C. § 2241; and (3) the relief the petitioner seeks is precluded by 18 U.S.C. § 3626. (ECF. No. 7.) For the reasons discussed below, the petition is denied.

## BACKGROUND

In September of 2018, the petitioner, a former lawyer and financial advisor, was charged with fraud and related crimes for his participation in a scheme to steal millions of dollars from his elderly clients and their estates. *United States v. Thomas Lagan*, No.18-CR-283 (N.D.N.Y. Sept. 6, 2018), ECF No. 1. On August 7, 2019, he pleaded guilty to conspiracy to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) and to filing a false income

tax return in violation of 26 U.S.C. § 7206(1). *Lagan*, No.18-CR-283 (N.D.N.Y Aug. 7, 2020), ECF No. 30. He also pleaded guilty in New York state court to Grand Larceny in the First Degree, and was sentenced to an indeterminate prison term of four to twelve years. *Lagan*, No.18-CR-283, slip op. at 2 (N.D.N.Y. May 11, 2020), ECF No. 91. In October of 2019, he surrendered to the U.S. Marshals, who transferred him to the Rensselaer City Jail to await his sentence in the federal case. (ECF No. 1 at 3.) On December 11, 2019, Senior District Judge Lawrence Kahn sentenced the petitioner to a prison term of 78 months to run concurrently with the state sentence. *Lagan*, No.18-CR-283 (N.D.N.Y. Dec. 12, 2019), ECF No. 58. On January 8, 2020, the petitioner was transferred from the Rensselaer City Jail to MDC Brooklyn for what he describes as a "short processing stop" before being sent to his assigned facility. (ECF No. 1 at 4.) The petitioner has been at MDC ever since. (*Id*.)

On April 15, 2020, the petitioner moved before Judge Kahn for emergency release pursuant to 28 U.S.C. § 2241 and 18 U.S.C. § 3582(c)(1)(A)(i), which provides for compassionate release of federal prisoners in extraordinary and compelling circumstances. *Lagan*, No.18-CR-283 (N.D.N.Y. Apr. 15, 2020), ECF No. 78. On April 24, 2020, the petitioner filed an amended motion; he dropped the § 2241 claim on jurisdictional grounds, but sought compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). He proposed three forms of relief: (1) that he be released to temporary home confinement until the BOP designated an assigned facility; (2) that he be released to full home confinement for the remainder of his sentence; or (3) that Judge Kahn tell the BOP that he would sentence the petitioner to home confinement unless the BOP granted the petitioner a furlough. *Lagan*, No.18-CR-283 (N.D.N.Y. Apr. 24, 2020), ECF No. 82.

The petitioner argued that he was at high risk for serious complications associated with COVID-19 because he was 62 years old,[1] obese, a heavy smoker and drinker and his family had a history of heart disease and lung cancer. *Lagan*, No.18-CR-283 (N.D.N.Y. Apr. 24, 2020), ECF No. 82-1. He further argued that COVID-19 was more likely to spread in a prison, and that MDC in particular could not "protect the health and safety of defendants in [its] custody" and "has not met even the most basic recommendations of the CDC for preventing the spread of the coronavirus." *Id*. at 7, 9. According to the petitioner, his confinement at MDC exposed him to an extraordinary risk of illness and death from COVID-19, thus warranting compassionate release, or in the alternative, a furlough to home confinement until the risks posed by the coronavirus abated. *Id*. at 22.

In a May 11, 2020 Decision and Order, Judge Kahn denied the petitioner's motion for compassionate release. *Lagan*, No.18-CR-283, slip op. at 14 (N.D.N.Y. May 11, 2020). Judge Kahn found that neither the petitioner's age, weight, nor medical history were risk factors identified by the CDC as increasing the likelihood of serious illness or death from COVID-19. *Id*. at 7-8. Moreover, Judge Kahn determined that "neither Lagan's own Medical Records nor his health records from the BOP . . . indicate that Lagan suffers from any of the other primary risk factors identified by the CDC and looked to by courts, such as asthma, diabetes, or immunocompromization." *Id*. at 8. Judge Kahn held that even if the conditions at MDC are "hazardous," the evidence was "insufficient to establish an extraordinary and compelling reason justifying release in the absence of Lagan demonstrating a 'particular vulnerability to contracting a deadly case of COVID-19.'" *Id*. at 9 (quoting *United States v. Logan*, No. 12-CR-307, slip op.

---

[1] In the pending habeas petition, the petitioner says he is 61. (ECF No. 1 at 4.)

3

at 8 n.4 (N.D.N.Y. April 22, 2020) (Kahn, J)).[2] Judge Kahn denied the petitioner's motion for compassionate release without prejudice. *Id*. at 14.

On May 18, 2020, the petitioner filed this motion for an emergency writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The petition largely restates the arguments that the petitioner made in his compassionate release motion but frames his injuries around alleged constitutional violations rather than the "extraordinary and compelling circumstances" standard of 18 U.S.C. § 3582(c)(1)(A)(i). *See id*. The petitioner argues that his "incarceration at MDC Brooklyn violates his right to be free from cruel and unusual punishment as secured by the Eighth Amendment to the United States Constitution" and that "his conditions of confinement violate his Sixth Amendment right to effective assistance of counsel." *Id*. at 1.[3] He requests that the Court order his immediate release to home confinement for the duration of his sentence or until "the BOP can demonstrate that he can be safely incarcerated at his designated facility," *id*. at 30, or that the BOP immediately transfer the petitioner to his designated facility, USP Canaan, to serve his sentence. *Id*.

---

[2] Judge Kahn held that 18 U.S.C. § 3582 authorizes the court to reduce a term of imprisonment but not to release a prisoner temporarily from BOP custody. *Lagan*, No. 18-CR-283, slip op. at 11 (N.D.N.Y. May 11, 2020) (citing *United States v. Daugerdas*, No. 09-CR-581, 2020 WL 2097653, at *5 (S.D.N.Y. May 1, 2020); *United States v. Pereyra-Polanco*, No. 19-CR-10, 2020 WL 1862639, at *2 (S.D.N.Y. Apr. 14, 2020); *United States v. Roberts*, No. 18-CR-528, 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020)). Judge Kahn also declined to interfere with the BOP's statutory authority to grant a furlough. *Id*. at 11-12 (citing 18 U.S.C. § 3622). Judge Kahn noted that the New York Department of Corrections and Community Supervision ("DOCCS") would take the petitioner into state custody in the event that the federal court granted compassionate release. *Id*. Thus, even if the Court granted the petitioner's motion, he would not necessarily get the relief he sought—immediate release from prison. *Id*. Neither party addresses the implications of the DOCCS detainer on the relief sought in the habeas petition, nor whether it is still in effect.

[3] As a post-conviction inmate pursuing collateral relief (rather than a direct appeal), the petitioner's right to counsel is limited. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . ."). Even if the petitioner could make a colorable argument that the restrictions at the MDC violate his Sixth Amendment right to counsel, he cites no case in which a court has released a post-conviction petitioner because of a Sixth Amendment violation, and the Court is aware of none. Therefore, the petitioner's Sixth Amendment claim is dismissed.

**DISCUSSION**

A federal prisoner may challenge the conditions of his confinement by habeas petition pursuant to § 2241. *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019); *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008); *Chambers v. United States,* 106 F.3d 472, 474-75 (2d Cir. 1997). This includes challenges to the dangerous conditions caused by the COVID-19 pandemic. *See United States v. Credidio*, No. 19-CR-111, 2020 WL 1644010, at *2 (S.D.N.Y. Apr. 2, 2020); *Basank v. Decker*, No. 20-CV-2518, 2020 WL 1953847, at *2 (S.D.N.Y. Apr. 23, 2020); *Martinez-Brooks v. Easter*, No. 3:20-CV-00569, 2020 WL 2405350, at *14 (D. Conn. May 12, 2020).

**I.     Res Judicata**

The government argues that *res judicata* bars the petitioner from seeking relief that the sentencing judge has denied. (ECF No. 7.) I disagree. Under the doctrine of *res judicata*, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.,* 522 U.S. 470 (1998)).[4]

Judge Kahn denied petitioner's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on statutory standards; he examined the length of time that the petitioner served, the danger that the petitioner posed to society, and whether the petitioner was at an exceptionally high risk of serious illness or death from exposure to COVID-19 based on CDC

---

[4] Although it appears Judge Kahn denied the petitioner's compassionate release motion on the merits, his dismissal of the motion "without prejudice" means his decision was not final. *Lagan*, No. 18-CR-283, slip op. at 14 (N.D.N.Y. May 11, 2020); *see also Martinez-Brooks*, 2020 WL 2405350, at *18 (rejecting the respondent's *res judicata* argument because the "[r]espondents have not suggested that there are inmates falling in the medically vulnerable subclass whose Section 3582 motions have been denied *on the merits* by their sentencing judges") (emphasis in original). However, even if Judge Kahn's decision was a final adjudication on the merits, the habeas petition raises unique issues that were not previously litigated in the petitioner's motion for compassionate release.

5

guidelines. *Lagan*, No. 18-CR-283, slip op. at 9 (N.D.N.Y. May 11, 2020). As Judge Kahn explained, to qualify for compassionate release, the petitioner must show that compelling and extraordinary circumstances warrant an immediate reduction of his sentence; the possibility that serious conditions will develop is not enough. *Id*. at 9 (citing *United States v. Haney*, No. 19-CR-541, 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020)); *see also* 18 U.S.C. § 3582(c).

Under the Eighth Amendment, by contrast, the warden has a duty to minimize serious risks of future harms, including exposure to and spread of communicable diseases. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."). The petitioner asserts that he has been subjected to cruel and unusual punishment at MDC in violation of the Eighth Amendment, because prison officials have demonstrated "deliberate indifference" to the serious risks of harm caused by the spread of COVID-19. (ECF No. 1 at 24 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).) The inquiry into whether the BOP has shown "deliberate indifference" to the petitioner's medical needs requires both objective evidence that the petitioner is at serious risk of harm, and subjective evidence that prison officials demonstrated a "conscious disregard" of the petitioner's medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Judge Kahn did not address either of these standards in his decision denying compassionate release.[5] Therefore, the petitioner's habeas motion is not precluded by *res judicata*.

---

[5] Judge Kahn referred to pending litigation in this district challenging the MDC's handling of COVID-19 on Eighth Amendment grounds—*Chunn v. Edge*, No. 20-CV-1590 (E.D.N.Y. filed Mar. 27, 2020) (Kovner, J.)—but held that even the possibility that the conditions at MDC might be "hazardous" was not enough to create the extraordinary and compelling circumstances for compassionate release without a finding that the petitioner had heightened risk factors associated with COVID-19. *Lagan*, No.18-CR-283, slip op. at 9 (N.D.N.Y. May 11, 2020).

6

**II.     Exhaustion**

Although not codified in the statute, the Second Circuit has held that federal prisoners must exhaust their administrative remedies before seeking habeas relief under § 2241. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). However, because exhaustion is not a statutory requirement of § 2241, a prisoner may seek a waiver of the exhaustion requirement by demonstrating cause and prejudice if "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies." *Id.*; *see also Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (explaining that the exhaustion requirement may be waived in certain circumstances). Some courts have waived exhaustion where any delay poses a serious threat to the inmate's health and safety. *United States v. Perez*, No. 17-CR-513-3, 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Sawicz*, No. 08-CR-287, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); *Martinez-Brooks*, 2020 WL 2405350, at *19.

Although the petitioner cites recent Department of Justice directives granting BOP officials the authority to release at-risk prisoners to home confinement (ECF. No. 1 at 19-20 (citing Dep't of Justice, *Prioritization of Home Confinement as Appropriate in Responses to COVID-19 Pandemic*, Opinion Letter (March 26, 2020))), and claims that he meets the qualifications for compassionate release outlined in these standards (ECF No. 1 at 21), he says nothing about whether he has ever pursued administrative remedies, nor does he explain why those options are unavailable to him.[6] This is especially puzzling because the primary relief he

---

[6] The petitioner did not exhaust his administrative remedies before requesting compassionate release from Judge Kahn. *See Lagan*, No.18-CR-283, slip op. at 4 (N.D.N.Y. May 11, 2020). Judge Kahn did not waive the exhaustion requirement, because the motion failed on the merits. *Id.* at 6 n.3 (quoting *United States v. Zehner*, No. 19-CR-485, 2020 WL 1892188, at *2 (S.D.N.Y. Apr. 15, 2020)) ("The Court need not reach the question of whether Defendant's failure to complete administrative exhaustion bars his application [for compassionate release], because the request for release can be denied on the merits.")).

7

seeks—transfer from the MDC to his assigned facility—is entirely within the BOP's control. *See* 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *see also Credidio*, 2020 WL 1644010, at *1 (the court does not have the authority to transfer an inmate out of the MCC while awaiting assignment to her designated facility); *Martinez-Brooks*, 2020 WL 2405350, at *14 (avoiding the question of whether the court has the authority to transfer inmates by ordering the BOP to develop faster processes for deciding outstanding requests for compassionate release). On this record, there is no justification for circumventing the BOP and its authority to determine the appropriate place for incarceration.

### III. Eighth Amendment

Even if I were to waive the exhaustion requirement, the petition fails on the merits. To establish that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment, the petitioner must prove that he is at "serious risk of harm" and that the MDC has demonstrated "deliberate indifference" to his medical needs. *Farmer*, 511 U.S. at 834. The petition fails to present specific evidence supporting either factor. Although he argues generally that COVID-19 poses a serious risk of harm to incarcerated people, the petitioner has not alleged that he is at heightened risk beyond what he argued to Judge Kahn. *Helling*, 509 U.S. at 35 (the petitioner "must show that he himself is being exposed" to unreasonable risk of future harm). The petitioner has not presented any new medical evidence to suggest that he is more vulnerable to contracting a deadly case of COVID-19. He does not explain why the substantial efforts that the MDC has undertaken to mitigate the risks of COVID-19 fail to protect him. *See Helling*, 509 U.S. at 36 (the court must consider new policies that "minimize the risk" and could "make it impossible for [the petitioner] to prove that he will be exposed to unreasonable risk with respect

8

to his future health"). Thus, the petitioner has failed to establish serious risk of harm giving rise to an Eighth Amendment violation.

Nor has the petitioner established that MDC officials have been deliberately indifferent to his serious medical needs. He cites newspaper articles about conditions in the MDC, as well as a litigant's expert reports in a pending action in this district (ECF No. at 13-19), none of which establish a willful or reckless disregard for the needs of inmates by prison authorities or staff. *See Estelle*, 429 U.S. 97, 105-06 ("negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," rather "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"); *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) ("An Eighth Amendment violation typically requires 'a state of mind that is the equivalent of criminal recklessness.'"). Indeed, after extensive discovery into the MDC's COVID-19 response, Judge Kovner denied the petitioners' motion for a preliminary injunction, holding that "petitioners have not shown a clear likelihood that MDC officials have acted with deliberate indifference to substantial risks in responding to COVID-19." *Chunn v. Edge*, No. 20-CV-1590, 2020 WL 3055669, at *1 (E.D.N.Y. June 9, 2020); *see also id*. at *26 ("The sweeping measures that MDC officials have adopted . . . counsel strongly against a finding that MDC officials are being deliberately indifferent to risks associated with COVID-19."); *accord Helling*, 509 U.S. at 36; *Credidio*, 2020 WL 1644010, at *2.

## IV. Requested Relief

Because the authority to determine the placement of confinement rests solely with the BOP, 18 U.S.C. § 3621, I cannot order the BOP to transfer the petitioner to USP Canaan. *See*

*Credidio*, 2020 WL 1644010, at *1.[7] While Judge Kahn recommended this facility, there is no evidence that the BOP has officially designated this facility for the petitioner; this Court does not have the power to make that designation. *See* 18 U.S.C. § 3621(b).[8]

In the alternative, the petitioner asks to be released to temporary home confinement pending assignment to his designated facility, citing numerous cases in which immigrant detainees have been released on bail pending the resolution of their cases. *See, e.g.*, *Basank*, 2020 WL 1953847, at *2; *Valenzuela Arias v. Decker*, No. 20-CV-2802, 2020 WL 1847986, at *1 (S.D.N.Y. Apr. 10, 2020). While such relief is possible, *see Boumediene v. Bush*, 553 U.S. 723, 787 (2008) ("when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release"), it is available only "when extraordinary or exceptional circumstances exist which make the grant of [a release] necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (internal citations omitted). No such extraordinary circumstances exist here. Judge Kahn has already found that the petitioner does not meet any of the CDC factors required to be considered medically vulnerable to COVID-19; nor is the Court aware of any case in which a court released a prisoner because of COVID-19 without first finding that the prisoner was at serious risk of complications or death due to exposure to the virus. Moreover, in light of the substantial efforts taken by the MDC to reduce

---

[7] Although courts have intervened in decisions to transfer an inmate when doing so would endanger the petitioner's life, *see Roba v. United States,* 604 F.2d 215, 218-219 (2d Cir. 1979), the petitioner has failed to identify such extreme circumstances that would warrant judicial intervention here.

[8] It appears that BOP has halted transfers between facilities because of COVID-19. (ECF No. 8 at 1.) The petitioner claims that "there are reportedly exceptions" to this no-transfer policy. (*Id*.) The petitioner is encouraged to request an exception through administrative channels.

the spread of COVID-19, as outlined in Judge Kovner's June 9, 2020 Order, there is no basis for concluding that releasing the petitioner into the larger community is the only way—or even the best way—to minimize the risks of COVID-19.[9]

## CONCLUSION

Accordingly, the emergency petition for a writ for habeas corpus is denied in its entirety. This case is dismissed.

**SO ORDERED.**

*s/Ann M. Donnelly*

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
June 19, 2020

---

[9] As discussed above, it is also likely that the DOCCS detainer would preclude the petitioner's release to home confinement, if this Court was able to grant such relief.